**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Teresa Eileen Montano,<br><br>        Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>        Defendant. | No. CV-21-00215-TUC-RCC<br><br>**ORDER** |

On March 29, 2022, Magistrate Judge Maria S. Aguilera filed a Report and Recommendation ("R&R"), recommending the Court reverse the final decision of the Commissioner and remand for further proceedings. (Doc. 24.) The Magistrate Judge informed the parties they had fourteen days to file objections and an additional fourteen days to respond. (*Id.* at 12.) Both parties filed objections (Docs. 25–26) and responses (Docs. 27–28). Having reviewed the objections, responses, and upon de novo review of the issues raised, the Court adopts the recommendation of the Magistrate Judge, reverses the decision of the Commissioner, and remands this matter for a hearing and decision by the Administrative Law Judge ("ALJ").

**I.    STANDARD OF REVIEW**

The standard the district court uses when reviewing a magistrate judge's R&R is dependent upon whether a party objects: where there is no objection to a magistrate's factual or legal determinations, the district court need not review the decision "under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, when a

party objects, the district court must "determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1). Moreover, "while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas*, 474 U.S. at 154.

There being no objection to the factual summary of the case, the Court adopts the Magistrate Judge's recitation of facts and only summarizes them as necessary to address the parties' objections.

## II. PLAINTIFF'S OBJECTIONS

Plaintiff makes two objections. Plaintiff claims the Magistrate Judge erred when she concluded (1) that at step two the ALJ did not need to consider Plaintiff's NeuroTrax scores individually, and (2) that the "ALJ's residual functional capacity assessment ("RFC"), which did not include any mental limitation, would have been exactly the same if Ms. Montano had a 'severe' mental impairment." (Doc. 26.)

First, Plaintiff argues that the ALJ was "not free to ignore significant probative evidence . . . simply because the evidence is not a medical opinion or a claimant's testimony." (*Id.* at 5.) Therefore, Plaintiff claims the ALJ should have specifically considered Plaintiff's NeuroTrax scores at step two and concluded that Plaintiff had "more than minimal-mild cognitive dysfunction." (*Id.*) The Court disagrees.

The Magistrate Judge stated:

> [Plaintiff] isolates discrete items of evidence . . . indicating that her mental impairments are more severe than the ALJ found and complains that the ALJ did not provide "legally sufficient reasons" for rejecting the evidence. However, while the ALJ's reasons for rejecting certain types of evidence (e.g. claimant testimony) must meet a heightened standard, the ALJ need not provide such reasons for rejecting individual treatment notes or testing results. . . . The ALJ simply must consider the evidence as a whole.

(Doc. 24 at 4 (citations omitted).)

The Court agrees with the Magistrate Judge that "the ALJ appropriately balanced the evidence as a whole before deciding that it tipped against Montano." (Doc. 24 at 5); *see Howard ex rel. Wolff*, 341 F.3d at 1012 (stating the ALJ need not discuss each piece of evidence). Moreover, despite Plaintiff's allegations to the contrary, the ALJ *did* consider the NeuroTrax evaluation, noting Plaintiff "had problems in the areas of memory, executive functioning, attention, visual spatial, verbal function, problem solving and working memory." (Administrative Record ("AR") 17.) Yet, the NeuroTrax scores were not dispositive to the severity determination. The ALJ weighed them against other evidence and concluded that Plaintiff's mental impairments were not severe. (AR 17–18.) The other evidence included: evaluations and observations by mental health providers, mini-mental status exams, neurological testing, medication effects, drug use, and the Plaintiff's subjective testimony. (AR 17–22.)

Even if the Court agreed with Plaintiff that the NeuroTrax evaluation should have been considered more in depth at step two, Plaintiff has not shown the legal basis for her assertion that the ALJ had no choice but to conclude that the NeuroTrax results, once considered, reflected impairment beyond what the ALJ found. (*See* Doc. 26 at 3.)

Next, Plaintiff claims that the Magistrate Judge erred when she concluded that, regardless of the severity of Plaintiff's mental impairment, the outcome of the RFC would have been the same. (*Id.* at 6.) The Court does not interpret the Magistrate Judge's statement in the same manner as Plaintiff. The Magistrate Judge was simply indicating that regardless of the severity finding in step two, the ALJ needed to consider the extent of Plaintiff's mental impairment when formulating the RFC. (*See* Doc. 24 at 5 ("[W]hether an impairment is found 'severe' at step two has no impact on the RFC, since that assessment is based on 'all of the claimant's medically determinable impairments,' including ones 'that are not severe.'") Thus, it is not the outcome of the RFC that would remain the same, rather it is the ALJ's requirement to consider both severe and non-severe impairments when formulating the RFC.

## III. DEFENDANT'S OBJECTIONS

Defendant objects to the Magistrate Judge's determination that the ALJ did not sufficiently consider Plaintiff's mental impairments when formulating the RFC. (Doc. 25 at 3.) Defendant argues that the ALJ's analysis of Plaintiff's mental impairments in the step two analysis was sufficient because the ALJ considered all the evidence and found Plaintiff's mental impairments to be minimal. (*Id.*) The ALJ's evaluation was thorough, Defendant asserts, because the ALJ considered Plaintiff's subjective symptom testimony, "treatment records, medical imaging, mental examinations, and the prior administrative medical findings of two State agency psychological consultations." (*Id.* at 4.) The ALJ determined that Plaintiff suffered from only mild mental impairment, Defendant states, so it was not necessary to incorporate mental impairment limitations into the RFC. (*Id.* at 6.)

To be found disabled, a claimant must demonstrate her impairment is "severe." *See Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001). The severity of a claimant's impairment is evaluated at step two. 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment must "significantly limit[ a claimant's] physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). The ALJ determines the level of mental impairment by considering a claimant's limitations in (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3). Then, prior to step four, the ALJ evaluates a claimant's RFC—the most a claimant can do despite their limitations. 20 C.F.R. § 404.1520(a)(4). This RFC serves as the basis for the ALJ's subsequent determination about whether a claimant can perform past relevant work or adjust to other work. 20 C.F.R. §§ 404.1520(e)–(g). While mild mental impairment limitations need not be reflected in the RFC, *Kavanaugh v. Commr'r of Soc. Sec. Admin.*, No. CV-19-04771-PHX-MTL, 2020 WL 3118691, at *3 (D. Ariz. June 12, 2020), *as amended* 2020 WL 4607250 (D. Ariz. Aug. 11, 2020), it is insufficient for an ALJ to make a "vague and conclusory assertion at step two that [the ALJ's] subsequent RFC analysis reflects the degree of limitation that [the ALJ] has found in the paragraph B mental function

analysis," *Slusher v. Comm'r of Soc. Sec. Admin.*, No. CV-20-02038-PHX-SPL, 2022 WL 596801, at *5 (D. Ariz. Feb. 28, 2022); *Michele M. v. Saul*, No. 19-cv-00272-JLB, 2020 WL 1450442, at *7 (S.D. Cal. Mar. 25, 2020) (stating an ALJ must give some indication that she considered the limiting effects of a non-severe mental impairment in the RFC). Moreover, when considering a claimant's limitations, "an ALJ cannot reject a claimant's testimony without giving clear and convincing reasons . . . specifically identify[ing] the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citing *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

## IV. DISCUSSION

The Magistrate Judge noted that an "ALJ must consider 'all' medically determinable impairments when determining a claimant's RFC." (Doc. 24 at 5 (citing 20 C.F.R. § 404.1545(a)(2).) The Magistrate indicated that the ALJ had acknowledged the RFC cannot merely reference the step-two analysis but "require[d] a more detailed assessment." (Doc. 24 at 6 (quoting ALJ's decision, AR 22).) Here, the Magistrate Judge observed, the ALJ's RFC analysis simply "stated that she had 'considered all symptoms' when determining the RFC." (Doc. 24 at 6.) The Magistrate Judge found this was error because "the ALJ knew that she could not rely on the step-two severity analysis and that a 'more detailed assessment' was necessary." (*Id.*) Moreover, the ALJ found Plaintiff had a medically determinable ailment that could have caused her alleged mental impairment and did not conclude that Plaintiff was malingering. *(Id.)* Therefore, the Magistrate indicated the ALJ was required to "consider—or at least mak[e] it clear that [s]he considered—those limitations in h[er] RFC determination." (*Id.* at 6–7 (citing *Slusher*, 2022 WL 596801, at *5) (first alteration added).) The ALJ's failure to do so constituted harmful error because crediting Plaintiff's testimony or considering her mental impairments could have affected the RFC and Plaintiff's "ability to perform the jobs cited by the ALJ at step five," the Magistrate Judge concluded. (*Id.* at 7.)

Defendant's arguments focus on the evidence the ALJ considered at step two and

the fact that Plaintiff's non-severe mental impairment did not require the ALJ include additional functional impairments in the RFC. However, these assertions do not undermine the Magistrate Judge's conclusions that (1) the ALJ acknowledged she needed a more detailed explanation of the mental limitations when developing the RFC, even absent any mental limitations, and that (2) the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's symptom testimony and failed to do so. *See Slusher*, 2022 WL 596801, at *5. This error was harmful as it could have affected the rest of the ALJ's analysis. The Court, therefore, reverses Commissioner's decision and remands for further proceedings in accordance with this Order.

IT IS ORDERED:

1) The R&R is ADOPTED (Doc. 24).
2) The decision of the Commissioner is reversed and remanded for further proceedings in accordance with the R&R.
3) The Clerk of Court shall docket accordingly and close the case file in this matter.

Dated this 23rd day of May, 2022.

_____
Honorable Raner C. Collins
Senior United States District Judge